**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2803
_____

UNITED STATES OF AMERICA

v.

CORNELIUS RILEY,
                              Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Criminal No. 1-18-cr-00018-001)
District Court: Honorable Richard G. Andrews
_____

Submitted: September 21, 2021

Before: JORDAN, PORTER, and RENDELL,
*Circuit Judges*.

(Filed: September 23, 2021)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

PORTER, *Circuit Judge*.

Cornelius Riley appeals his conviction and sentence for distributing heroin. We will affirm the District Court's judgment. We write for the parties, who are familiar with the record.

I[1]

Riley first argues that a witness's supposed misidentification of him during trial ultimately led to a violation of Riley's Fifth Amendment right to due process. At trial, police detective Greg Simpler testified about how he conducted a controlled purchase of heroin from Riley. When asked to identify Riley to the jury, Simpler stated, "He is sitting back there in the - - at the defense table. It looks like he's wearing maybe a gray jacket maybe." S. App. 42. Later in his testimony, the government's attorney asked the District Court to declare for the record that Simpler had accurately identified Riley as the perpetrator. Instead of granting the government's request, the District Court paused the testimony to hold a sidebar conference with counsel.

During the conference, the District Court stated that it would not declare that Simpler had accurately identified Riley. The District Court said that it heard Simpler identify Riley as "the guy in the gray jacket," S. App. 79, but noted that "[Riley]'s not wearing a gray jacket." S. App. 80. Rather, Riley's counsel was wearing a gray jacket, thus suggesting that Simpler might have identified Riley's counsel as the perpetrator. Wisely exercising caution, the District Court decided that he was "not going to say the

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

2

record reflects identification because I don't think it does." S. App. 80. The conference concluded, and the government's attorney returned to questioning Simpler. Simpler then made a more precise identification of Riley, which the District Court accepted.

In a post-trial ruling, the District Court changed course from its conclusion at the sidebar conference. The District Court explained, "I was not then sure whether Detective Simpler had or had not correctly identified [Riley]," but after "reviewing the exact testimony, it is clear that Detective Simpler was expressing some hesitation in how to describe what [Riley] was wearing." App. 11a. The District Court continued, "Defense counsel was wearing a gray suit jacket. [Riley] was wearing a long-sleeved gray upper garment that I think was better described as a gray shirt than a gray jacket." App. 11a. Thus, the District Court found that Simpler had correctly identified Riley before the sidebar conference.

On appeal, Riley claims that Simpler initially misidentified Riley's counsel as the perpetrator. He argues that the District Court's subsequent decision to conduct a sidebar conference with counsel—leaving Riley alone at the table in front of Simpler's gaze— violated Riley's Fifth Amendment guarantee to due process. According to Riley, the District Court's action was "unnecessarily suggestive" because it gave Simpler a strong clue as to who he should identify as the perpetrator: the only person remaining seated at the defense table during the sidebar conference. Appellant's Br. 31–32.

As Riley acknowledges, he did not raise his objection to the sidebar conference until after trial, so we will review his due-process argument under the plain-error standard. *See United States v. Kolodesh*, 787 F.3d 224, 230 n.4 (3d Cir. 2015); *see also*

3

Fed. R. Crim. P. 52(b). Under the plain-error standard, a defendant must show that (1) an error occurred, (2) the error is "clear or obvious," and (3) the error affected the defendant's substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If a defendant satisfies these three requirements, we may exercise our discretion to reverse "only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (alteration in original) (internal quotation marks omitted) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

"A due process violation can result when an identification procedure is so suggestive that it undermines the reliability of the resulting identification." *United States v. Lawrence*, 349 F.3d 109, 115 (3d Cir. 2003). But we do not need to discuss Riley's argument in depth because its key factual premise is lacking: Simpler did not misidentify Riley. In his post-trial ruling, the District Court found that Simpler had correctly identified Riley before the sidebar conference began. If Simpler had already identified Riley before the sidebar conference, as the District Court found, then the sidebar conference was not an unduly suggestive action that revealed to Simpler who he should identify as the perpetrator. Accordingly, there was no error.[2]

II

Riley next argues that the District Court violated the Sixth Amendment at sentencing by using a judicially found fact to increase Riley's punishment when the fact

---

[2] Riley's additional argument, that his trial counsel had a conflict of interest that rendered him ineffective because Simpler misidentified trial counsel as the perpetrator, also fails. Given the District Court's finding that Simpler did not misidentify trial counsel as the perpetrator, no basis exists for trial counsel to have had a theoretical conflict of interest.

4

should have been decided by a jury. Riley's presentence investigation report ("PSR") assigned an offense level of 30 for Riley's conduct and gave him a criminal history category of IV, leading to a Sentencing Guidelines range of 135 to 168 months. The probation office arrived at an offense level of 30 by using the results from a laboratory report indicating that some of the heroin found on Riley contained a fentanyl analogue. Riley argues that if the heroin did not contain a fentanyl analogue, then he would have received a Sentencing Guidelines range of 77 to 96 months. At sentencing, the District Court adopted the facts in the PSR and sentenced Riley to 100 months' imprisonment.

Riley asks us to extend the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *United States v. Alleyne*, 570 U.S. 99 (2013), to cover any finding of fact that increases a defendant's Sentencing Guidelines range. He cites *Apprendi* and *Alleyne* for the proposition that factual determinations increasing the statutory maximum or minimum sentence must be made by a jury with proof beyond a reasonable doubt. We review questions of law, such as Riley's Sixth Amendment challenge, de novo. *United States v. Barbosa*, 271 F.3d 438, 452 (3d Cir. 2001).

Our precedent forecloses Riley's argument. In *United States v. Smith*, two defendants argued "that the District Court violated their Sixth Amendment rights by enhancing their Guidelines range on the basis of judge-found facts." 751 F.3d 107, 117 (3d Cir. 2014). "They contend[ed] that a jury, not a sentencing judge, must find any facts that increase a defendant's sentence, even if, as in this case, the sentence implicated neither a mandatory minimum nor a statutory maximum." *Id.* We held that *Apprendi* and *Alleyne* did not support the defendants' argument. *See id.* Rather, at sentencing, "[a]

5

district court may, consistent with the Fifth and Sixth Amendments, engage in additional factfinding, using a preponderance-of-the-evidence standard, to select an appropriate sentence up to the statutory maximum based on application of the Guidelines." *Id.*

Riley's conviction for violating 21 U.S.C. § 841(a)(1) and (b)(1)(B) yielded a minimum of five years' imprisonment and a maximum penalty of forty years' imprisonment. Our precedent permitted the District Court "to find facts relevant in selecting a sentence *within* th[is] prescribed statutory range" of five to forty years. *Smith*, 751 F.3d at 117. The District Court's factfinding replaced the baseline range of 77 to 96 months with a range of 135 to 168 months. Both ranges are well within the statutory minimum and maximum.

In addition to *Apprendi* and *Alleyne*, Riley claims that *Peugh v. United States*, 569 U.S. 530 (2013), shows that the District Court violated the Sixth Amendment. In *Peugh*, the Supreme Court held that retroactively applying a more punitive Sentencing Guidelines range violated the Ex Post Facto Clause. *Id.* at 544. The Court rejected the government's argument that because the Sentencing Guidelines were advisory, their application lacked "adequate legal force to constitute an *ex post facto* violation." *Id.* at 548. The Court concluded that the advisory nature of the Sentencing Guidelines meant little because "the range is intended to, and usually does, exert controlling influence on the sentence that the court will impose." *Id.* at 545. Thus, application of a more punitive, retroactive Sentencing Guidelines range created a "'significant risk' of a higher sentence" for the defendant. *Id.* at 550 (quoting *Garner v. Jones*, 529 U.S. 244, 256 (2000)).

6

Riley contends that "*Peugh* . . . reflect[s] the practical reality that sentencing guidelines are the prescribed range for sentencing just as much as minimum and maximum penalties." Appellant's Br. 23. Thus, "a fact which increases those ranges implicates due process protections." Appellant's Br. 23. But the Supreme Court rejected Riley's argument in *Peugh*, noting that "the Sixth Amendment and *Ex Post Facto* Clause inquiries are analytically distinct." *Peugh*, 569 U.S. at 549–50. The Court explained, "Our Sixth Amendment cases have focused on when a given finding of fact is required to make a defendant *legally eligible* for a more severe penalty." *Id.* at 550 (emphasis added). It continued, "Our *ex post facto* cases, in contrast, have focused on whether a change in law creates a '*significant risk*' of a higher sentence." *Id.* (second emphasis added) (quoting *Garner*, 529 U.S. at 256). *Peugh* does not help Riley's case.

\* \* \*

We will affirm the judgment of the District Court.

7